# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**PETER C. AQUIAR,**

     **Plaintiff,**

v.                                                               **No. CIV 02-0441 WJ/LCS**

**NEW MEXICO CORRECTIONS
DEPARTMENT, et al., WACKENHUT
CORRECTIONS CORPORATION (W.C.C.), et al.,
CORRECTIONS MEDICAL SERVICES, (C.M.S.), et al.,
LEA COUNTY CORRECTIONS FACILITY, et al.,
CORRECTIONS OFFICER VILLALOBOS,
an individual, OFFICER LT. DUTTON, DIANE GLASER,
SERGEANT BRAY,**

     **Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

This matter is before the Court on Defendant Villalobos' *Martinez* Report[1] (Doc. 27), filed December 20, 2002, and Defendant Diane Glaser's *Martinez* Report (Doc. 28), filed December 27, 2002, herein construed as motions for summary judgment. On April 26, 2002, the assigned United States District Judge referred this matter to the undersigned United States Magistrate Judge to submit proposed findings of fact and recommendation for disposition of this case pursuant to 28 U.S.C. § 636(b)(1). The United States Magistrate Judge, having considered the *Martinez* Reports, arguments, record, relevant law, and being otherwise fully informed, recommends that summary judgment be granted in favor of Defendants.

---

[1] The Tenth Circuit has authorized this Court to require a *Martinez* report to develop a factual or a legal basis for determining whether a prisoner plaintiff has a meritorious claim. *See Martinez v. Aaron*, 570 F.2d 317, 320 (10th Cir. 1978).

**PROPOSED FINDINGS**

1.     Plaintiff, a *pro se* litigant proceeding *in forma pauperis*, filed a Civil Rights Complaint in this Court alleging that he incurred injuries when he was subjected to excessive force by Defendant Villalobos and that Defendant Glaser refused to rendered necessary medical treatment. The Complaint seeks money damages under 42 U.S.C §1983. On May 16, 2002, the district judge issued a Memorandum Opinion and Order that dismissed the claims as to Defendants New Mexico Department of Corrections, Lea County Correctional Facility, Corrections Medical Services, Dutton, Bray, and Wackenhut Corrections Corporation. On September 3, 2002, Defendant Glaser answered the Complaint, denying liability and advancing affirmative defenses. On October 24, 2002, Defendant Villalobos answered the Complaint, denying liability and advancing affirmative defenses, including the affirmative defense of failure to exhaust administrative remedies.

2.     On November 4, 2002, I directed Defendant Villalobos to submit a *Martinez* report on the issue of failure to exhaust administrative remedies. In a letter dated November 19, 2002, counsel for Defendant Villalobos stated that Defendant Villalobos withdrew the affirmative defense of failure to exhaust administrative remedies because further investigation revealed that Plaintiff had exhausted available administrative remedies. On November 25 2002, I withdrew my Order of November 4, 2002 and issued an Order requiring Defendants to submit a *Martinez* report on all pending issues. On November 27, 2002, I issued an Amended Order clarifying the briefing schedule. In the November 27, 2002 Order, I notified the parties that the *Martinez* report may be used in deciding whether to grant summary judgment on Plaintiff's claims, whether by motion or *sua sponte,* and that the parties should submit whatever materials they considered to be relevant to Plaintiff's claims. *See Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).

3. Defendant Villalobos and Defendant Glaser submitted their *Martinez* reports on December 20, 2002, and December 27, 2002, respectively. Plaintiff filed separate responses to the *Martinez* reports on January 13, 2003. On January 22, 2003, Plaintiff filed a supplemental repose to Defendant Villalobos' *Martinez* report and moved to strike certain portion of Defendant Villalobos' exhibits. Defendant Villalobos did not file a response to Plaintiff's Motion to Strike. Neither Defendant replied to Plaintiff's responses to the *Martinez* reports.

4. Defendant Villalobos submitted Plaintiff's entire prison medical file, consisting of 507 pages and dating back to 1990. (Def. Ex. 8.) Plaintiff has moved to strike Defendant's Exhibit 8, Bates No. 0001 through 0028, 0036 through 0054, 0058 through 0459, and 0461 through 0507. In his Complaint, Plaintiff alleged that Defendant Villalobos, a corrections officer, assaulted him with a weapon on November 23, 2001, in violation of his right to be free from cruel and unusual punishment and that Defendant Glaser failed to render proper medical attention by verbally refusing to treat Plaintiff for the injuries incurred in the Villalobos assault. The documents at issue are not relevant to any issue in this lawsuit and the Motion to Strike is unopposed. Under these circumstances, Plaintiff's Motion to Strike should be granted. Defendant's Exhibit 8, Bates No. 0001 through 0028, 0036 through 0054, 0058 through 0459, and 0461 through 0507 should be stricken from the record.

5. Defendants have submitted evidence that at 2:30 p.m. on November 23, 2001, Plaintiff's right elbow was examined at his cell door by D. Miller, R.N. (Def. Glaser Ex. A; Def. Villalobos Ex. 8, Bates No. 35.) Nurse Miller observed a "[s]mall, slightly abraised [sic] area, lateral to elbow . . . very slight swelling and discoloration . . . in comparison to [left] elbow. Tissue is soft and pliable at this time." (*Id*.) Miller applied "T.A.O.," a triple antibiotic ointment, advised Plaintiff

to keep the area clean and dry and to call medical personnel if there were further problems. (*Id.*) On November 27, 2001, Plaintiff was assessed for high risk behavior because he had told medical personnel that he had been injecting drugs four months before. (Def. Glaser Ex. B2; Def. Villalobos Ex. 8, Bates No. 34.) No mention was made of his right elbow. (*Id.*)

      6.      On November 28, 2001, M. Bush, R.N. wrote that Plaintiff had asked for documentation of the condition of his right elbow. (Def. Glaser Ex. C; Def. Villalobos Ex. 8, Bates No. 33.) Plaintiff stated that he was hit by a book thrown by security during a shakedown. (*Id.*) Nurse Bush observed a bruised area on Plaintiff's right elbow approximately six to seven centimeters long and two centimeters wide that was already resolving. (*Id.*)

      7.      On December 3, 2001, Plaintiff told Nurse Miller that he wanted Miller take a picture of his bruise. (Def. Glaser Ex. D; Def. Villalobos Ex. 8, Bates No. 32.) Miller observed that Plaintiff's right lateral elbow remained bruised, but that it was in the "green-yellow healing stage" and that the tissue was remained soft. (*Id.*) Miller advised Plaintiff that medical staff did not take pictures. (*Id.*)

      8.      On December 9, 2001, Plaintiff submitted a sick call request for sore, bleeding and painful gums and for his eyeglasses. (Def. Glaser Ex. E; Def. Villalobos Ex. 8, Bates No. 460.) Plaintiff stated that he had a bruise on his right upper arm that he wanted photographed for his lawyer. (*Id.*) On December 10, 2001, M. Ellis, R.N. observed that Plaintiff's gums were inflamed and his face was swollen. (Def. Glaser Ex. F; Def. Villalobos Ex. 8, Bates No. 32.) Nurse Ellis referred Plaintiff to a dental appointment on December 11, 2001, and dispensed Tylenol and warm salt water gargles. (*Id.*) On December 11, 2001, Plaintiff was transferred to the Southern New Mexico Correctional Facility for dental care. (Def. Glaser Ex. G; Def. Villalobos Ex. 8, Bates No. 29.)

9. Julia C. Stagner, Vice President for Business Operations for Correctional Medical Services, Inc. (CMS), avers that Defendant Nurse Diane Glaser was employed by CMS between November 27, 2000 and June 30, 2002 at the Lea County Correctional Facility. (Def. Glaser Ex. I.) Defendant Glaser was never employed at any other CMS facility and she is no longer employed by CMS. (*Id*.)

10. On December 31, 2001, Plaintiff filed a grievance concerning the November 23, 2001 incident and requested that Defendant Villalobos be relived of his duties as a corrections officer. (Def. Villalobos Ex. 7.) In an attachment to the grievance, Plaintiff wrote that on November 23, 2001, after his cell was searched as part of a unit search, Plaintiff was escorted back to his cell by Defendant Villalobos. (Def. Villalobos Ex. 7B.) After Defendant Villalobos uncuffed Plaintiff, Villalobos left Plaintiff's food port open and Plaintiff began dumping magazines out of his cell. (*Id*.) Plaintiff stated that Defendant Villalobos and Officer Garcia came to Plaintiff's cell door and demanded to know what Plaintiff was doing. (*Id*.) Plaintiff told Villalobos and Garcia that those magazines should have been confiscated during the search. (*Id*.) Plaintiff wrote that Defendant Villalobos became verbally abusive to Plaintiff and threatened to enter his cell and beat him up. (*Id*.) Plaintiff stated that as Plaintiff was picking up more books to toss out of his cell, Defendant Villalobos picked up a hard cover book and "viciously threw" the book through the food port at Plaintiff, striking Plaintiff in his right elbow. (*Id*.)

11. Plaintiff became enraged "with pain and anger." (Def. Villalobos Ex. 7B.) Officer Garcia closed the food port. (*Id*.) Plaintiff states that Defendant Villalobos had to be forcefully pulled away from Plaintiff's cell by Officer Gomez and that as he was being dragged away, Defendant Villalobos continued to threaten Plaintiff with physical violence. (*Id*.) Plaintiff asserted that after

5

Defendant Villalobos was removed, Sergeant Perry advised plaintiff that he would call a supervisor. (Def. Villalobos Ex. 7C.) Plaintiff claimed that later, as Sergeant Ortiz was questioning Plaintiff about the incident, Defendant Villalobos returned to Plaintiff's cell and verbally abused Plaintiff until Sergeant Ortiz ordered Defendant Villalobos to leave. (*Id.*)

12. Sergeant Perry wrote in a statement that he had no knowledge of Defendant Villalobos being unprofessional and that the accusations were false. (Def. Villalobos Ex. 7F.) Defendant Villalobos wrote that Plaintiff threw trash out of his food port, that Villalobos secured the food port while Officer Garcia turned the key and that several minutes later, Plaintiff complained of pain . (Def. Villalobos Ex. 7G.) Officer Garcia stated that Plaintiff threw trash and magazines out of his cell, that Garcia and Villalobos secured the food port, and that fifteen or twenty minutes later, Plaintiff a started to complain. (Def. Villalobos Ex. 7H.) Officer Gomez wrote that Plaintiff had become upset when his pillow was confiscated, that Plaintiff became verbally abusive, that Gomez tried to calm Plaintiff down, but that Plaintiff insisted on talking to a lieutenant. (Def. Villalobos Ex. 7I.) Sergeant Ortiz wrote that he was not present at the time of the incident, but that he spoke to Plaintiff about the incident and saw no physical markings on Plaintiff. (Def. Villalobos Ex. 7J.) Plaintiff's grievance was denied on February 28, 2002. (Def. Villalobos Ex. 7E.)

13. With respect to Defendant Glaser, Plaintiff responds that he asked Nurse Glaser to document his injury on the evening of November 23, 2001, but that she refused, put her arms around a corrections officer and stated that examination of the bruise was "security's job" and not hers. Plaintiff reasons that there are no records of his contact with Defendant Glaser on November 23, 2001 because she flatly refused to inspect his injury. Plaintiff further asserts that the administration of triple antibiotic ointment demonstrates that the assault was sufficiently serious to break the skin.

14.     This court liberally construes *pro se* litigants' pleadings and holds them to a less stringent standard than required of those prepared by a lawyer. *See Gillihan v. Shillinger*, 872 F.2d 935, 938 (10th Cir. 1989). At the same time, the court may not assume the role of advocate for the *pro se* litigant, and need not accept as true unsupported conclusory allegations. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the Court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

15.     The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the non movant on an essential element of the non movant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998). Once the

7

movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

16. If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Muñoz,* 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Bullington v. United Air Lines*, Inc., 186 F.3d 1301, 1313 (10th Cir. 1999). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

17. Plaintiff claims that Defendant Glaser denied him medical care in violation of the Eighth Amendment. To prevail on a denial of medical care claim under the Eighth Amendment, an inmate must show that the defendant was deliberately indifferent to a medical needs. *Estelle v. Gamble*, 429 U. S. 97, 104 (1976). The condition complained of must be sufficiently serious to implicate constitutional protection and the prison official must have acted with deliberate indifference to the inmate's health. *Farmer v.* Brennan, 511 U.S. 825, 834 (1994); *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if the deprivation is "sufficiently serious"-- that is, "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

*Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999). The subjective component, deliberate indifference, is satisfied if an officer "knows of and disregards an excessive risk to [a detainee's] health or safety." *Sealock*, 218 F.3d at 1209 (*quoting Farmer v. Brennan*, 511 U.S. at 837). The Court has defined deliberate indifference as equal to "recklessness" in which "a person disregards a risk of harm of which he is aware." *Farmer*, 511 U.S. at 836-837.

    18.    Defendants have submitted objective evidence that Plaintiff's condition was not a serious medical need. Plaintiff was examined by Nurse Miller less than six hours after the incident. Nurse Miller observed a small slightly abraded area near Plaintiff's elbow with very slight swelling and discoloration. Nurse Miller applied a triple antibiotic ointment, advised Plaintiff to keep the area clean and dry, and to call medical personnel if there were further problems. During a November 27, 2001, contact with medical personnel, no mention was made of Plaintiff's right elbow. On November 28, 2001, in response to Plaintiff's request for documentation, Nurse Bush observed a bruised area on Plaintiff's right elbow approximately six to seven centimeters long and two centimeters wide that was already resolving. On December 3, 2001, in response to another request for documentation, Nurse Miller saw that Plaintiff's right lateral elbow remained bruised, but that it was healing.

    19.    Plaintiff's right elbow injury simply does not satisfy the objective component of a deliberate indifference claim. A medical need is serious if it has been diagnosed by a doctor, or if it would be obvious to a layperson that doctor intervention was needed. *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002). The record demonstrates that Plaintiff's injury consisted of a bruise with slightly abraded skin. Common knowledge teaches that such a superficial injury requires only time to heal and that little can be done to assist the healing process. Plaintiff's injury is insufficient as a matter of law to satisfy the objective component of an Eighth Amendment claim.

20.     The subjective component is also lacking.  "[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980).  Assuming *aguendo* that Defendant Glaser flatly refused Plaintiff's request for additional documentation for his bruise on the evening of November 23, 2001, there is no indication that additional treatment would have served any purpose.  Plaintiff's bruise had already been examined by Nurse Miller during the afternoon.  Nurse Miller applied triple antibiotic ointment and advised him to keep the area clean and dry.  Plaintiff offers no evidence that his condition had worsened.  Indeed, during his November 27, 2001 contact with medical personnel, Plaintiff did not even mention the bruise. Plaintiff received adequate medical care for his injury on the day of the incident. Because no further medical intervention was needed, Nurse Glaser could not have been deliberately indifferent.

21.     Defendant Glaser has met her initial burden by showing there is an absence of evidence to support Plaintiff's claim against her by submitting evidence that his injury was *de minimis* and that Plaintiff required no further medical treatment.  *See Celotex*, 477 U.S. at 323.   The burden then shifted to Plaintiff demonstrate a genuine issue for trial on a material matter. *McGarry*, 175 F.3d at 1201.  Plaintiff had the burden of setting forth specific facts showing there is a genuine issue for trial as to a dispositive matter. *Muñoz,* 221 F.3d at 1164.  In his Response, Plaintiff has submitted nothing that demonstrates a genuine issue for trial on a material matter.  Defendant Glaser is entitled to summary judgment.

22.     Plaintiff accuses Defendant Villalobos of using excessive physical force in violation of the Eighth Amendment. When an official stands accused of using excessive force against an inmate, the deliberate indifference standard does not apply. *Farmer*, 511 U.S. at 835.  In order to establish

10

an Eighth Amendment excessive force violation, Plaintiff must show that Defendant Villalobos acted maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). In making this inquiry, the need for the application of force must be balanced against the amount of force used. *Id*. at 7. Plaintiff need not present facts of significant injury if he also presents facts showing that Defendant Villalobos "maliciously and sadistically use[d] force to cause harm." *Id*. at 9. The *Hudson/Whitley* standard applies whether or not the force was used to quell a disturbance. *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001)

23. Defendant Villalobos argues that he is entitled to summary judgment because Plaintiff's injury was *de minimis*. This argument is not well-taken. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated. This is true whether or not significant injury is evident." *Hudson*, 503 U.S. at 9. In *Hudson*, the Supreme Court explained that while "*de minimis* uses of physical force" are insufficient to establish a constitutional violation, unnecessary blows causing bruises and swelling are actionable under the Eighth Amendment. *Id*. at 9-10. The "'ultimate constitutional inquiry is directed at whether an unnecessary and wanton infliction of pain has occurred.'" *DeSpain*, 264 F.3d at 978 (*quoting Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992)). If so, there is no need for Plaintiff to show significant and lasting injury. *DeSpain*, 264 F.3d at 978.

24. Plaintiff stated that Defendant Villalobos maliciously threw a hard cover book at him through his food port while Plaintiff was locked in his cell and that the book hit Plaintiff and bruised

11

his elbow.[2] (Def. Ex. 7B,7C.) On November 23, 2001, medical personnel observed a bruise and abraded skin on Plaintiff's elbow. (Def. Villalobos Ex. 8, Bates Nos. 35.) The bruise was still evident ten days later. (Def. Villalobos Ex. 8, Bates Nos. 35.) Defendant Villalobos has submitted his own statement and statements from his fellow corrections officers that Defendant Villalobos did not throw anything at Plaintiff and that Plaintiff was not injured. (Def. Ex. 7F, 7G, 7H, 7I, 7J.) On summary judgment, the Court must examine the record and make all reasonable inferences in the light most favorable to the non-moving party. *Muñoz*, 221 F.3d at 1164. The facts, viewed in the light most favorable to Plaintiff, show that after he was confined in his cell, Defendant Villalobos verbally insulted Plaintiff, threw a hard cover book at Plaintiff in a fit of rage, hitting him on the right elbow, and that other guards had to drag Villalobos away from Plaintiff's cell door. As a result of the assault, Plaintiff suffered bruised elbow with abraded skin. On these facts, a reasonable jury could conclude that Defendant Villalobos' behavior falls into the category of malicious and sadistic rather than a good faith effort to restore discipline. As the record now stands, Defendant Villalobos is not entitled to summary judgment.

## RECOMMENDED DISPOSITION

I recommend that summary judgment be granted in favor of Defendant Glaser and against Plaintiff. The claims against Defendant Villalobos remain pending.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations

---

[2] The parties have waived any objection to form of the exhibits under FED.R.CIV.P. 56(e) by failing to object. *Ruby v. Springfield R-12 Pub. Sch. Dist.*, 76 F.3d 909, 912 n. 8 (8th Cir. 1996) (absent motion to strike or other timely objection, district court may consider document that fails to conform to Rule 56(e)'s formal requirements).

that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**